■ HOWARD S. DENBURG, Appellant, v PARKER CHAPIN FLAT-TAU & KLIMPL, Respondent.—Order of the Supreme Court, New York County (David B. Saxe, J.), entered on April 2, 1991, which denied plaintiff's motion for summary judgment, unanimously modified, on the law, the motion is granted as to the first, second, and third causes of action, the matter is remanded for an accounting, and otherwise affirmed, with costs.

The plaintiff-appellant withdrew as a partner of the defen-dant-respondent law firm in May, 1984. He then became a partner of a competing law firm and represented some of the same clients he had previously represented while at Parker Chapin.

Pursuant to paragraph 11 (b) (iii) of the Amended and Restated Partnership Agreement which plaintiff signed in 1983, the capital account of a withdrawn partner is "paid to him or her without interest at the end of the fifth fiscal year after his or her withdrawal."

Paragraph 18 of the Agreement, captioned "Withdrawal, Terminations, Dissolution and Reestablishment," provides as pertinent: "(a) Withdrawal of Partners: Any active Partner may withdraw from the firm at any time on not less than sixty (60) calendar days notice to the firm. If an Active Partner withdraws from the firm and shall engage in the private practice of law individually, through another law firm, or otherwise, prior to July 1, 1988 ('Withdrawn Partner'), the Withdrawn Partner shall, on demand, pay to the firm a sum equal to the greater of (i) 12½% of the share of the firm's Profits allocable to him or her during the two complete fiscal years of the firm immediately preceding the date on which he or she withdrew from the firm (except that no amounts shall be payable by the Withdrawn Partner whose share of the firm's Profits allocable to him or her during the fiscal year of the firm immediately preceding the date on which he or she withdrew from the firm was less than $85,000 provided that such Withdrawn Partner directly or through another law firm renders no services to clients of the firm during the 24 months following the date on which he or she withdrew from the

firm), or (ii) 12½% of the total billings to former clients of the firm made by such Partner or other law firm in which he or she is a partner or associate, with respect to services rendered during the 24 month period following his or her withdrawal from the firm. The firm shall apply the whole or a portion of the capital account of the Withdrawn Partner to the payment of the obligation referred to in the preceding sentence. Withdrawn Partners shall not be entitled to any accounting or other payment for work in process, uncollected accounts, good will or any other matter or cause."

As of June 30, 1983, plaintiff's capital account at Parker Chapin had an actual adjusted capital balance of $19,800. Plaintiff contends based upon a report rendered by the defendant that the balance as of June 30, 1984, totalled $39,171.

Plaintiff commenced this action at the end of the fifth fiscal year following his withdrawal from the defendant law firm after none of the funds in his capital account had been paid to him.

Plaintiff's first cause of action seeks a declaration that paragraph 18 of the Partnership Agreement constitutes an impermissible restriction on the practice of law and that defendant's withholding of $26,450 as a monetary penalty pursuant thereto is improper. The second cause of action alleges breach of contract based upon defendant's failure to pay plaintiff the balance of his capital account pursuant to paragraph 11 (b) (iii) of the Partnership Agreement. The third cause of action seeks an accounting and the fourth cause of action alleges an account stated.

Plaintiff moved for summary judgment as to each of these causes. In opposition to the motion, defendant submitted the affidavit of Irving Rosenzweig, a member of its executive committee. Rosenzweig described how the firm had moved into new premises and taken out a $4.5 million loan to finance the move. He alleged that the partners at the time of the move agreed either to stay together for five years to share the burden of the increased costs, "or that those who chose not to do so would compensate the Firm appropriately." Rosenzweig stated that the purpose of paragraph 18 was to provide adequate compensation to the firm if a partner withdrew during the limited period of time that the partners felt themselves at risk due to the $4.5 million loan.

Rosenzweig also alleged that plaintiff orally agreed, two years after his departure, that his capital account should be applied in satisfaction of the paragraph 18 obligation. Plaintiff

denies such agreement. The record contains no writing reflecting this alleged agreement. Moreover, paragraph 18 specifically provides: "[t]he firm shall apply the whole or a portion of the capital account of the Withdrawn Partner to the payment of the obligation referred to in the preceding sentence." Thus, even if plaintiff did agree to set off his capital account as alleged, it is merely repetitive of, and no more enforceable than, the terms of paragraph 18.

In denying the plaintiff's motion for summary judgment upon the above described causes of action, the IAS court took the view that paragraph 18 might be shown to be "a reasonably limited arrangement for recoupment of partnership liabilities." We disagree.

In *Cohen v Lord, Day & Lord* (75 NY2d 95, 96), the Court of Appeals clearly held that, "A law firm partnership agreement which conditions payment of earned but uncollected partnership revenues upon a withdrawing partner's obligation to refrain from the practice of law in competition with the former law firm restricts the practice of law in violation of Disciplinary Rule 2-108 (A) of the New York Code of Professional Responsibility and is unenforceable in these circumstances as against public policy". The Court also observed, "The forfeiture-for-competition provision would functionally and realistically discourage and foreclose a withdrawing partner from serving clients who might wish to continue to be represented by the withdrawing lawyer and would thus interfere with the client's choice of counsel." *(Supra,* at 98.)

Paragraph 18 is no less a forfeiture-for-competition provision than the provision at issue in *Cohen (supra).* Although defendant endeavors to explain paragraph 18 as an attempt by its partners to assure that the firm's financial commitments would be met, it is plain that this is, at best, only a partial account of the provision's purpose. Whatever other incidental objectives the provision may have had, it is evident that its principal function was to prevent withdrawing partners from competing with their former firm. The provision, after all, exacts a penalty only from those withdrawn partners who continue to practice law privately, and, therefore, potentially in competition with the firm, and exempts from the penalty only those who, *inter alia,* do not in their new situations continue to serve their former firm's clients. Indeed, the exemption is inexplicable if a principal purpose of the provision was not to prevent competition. Moreover, even if the firm's motive in assessing the penalty was benign, it is clear that the effect of the penalty provision would be to

discourage departing counsel from continuing to represent clients of the firm and concomitantly to interfere with the clients' choice of counsel. Accordingly, we are of the view that paragraph 18 is void on its face as a forfeiture-for-competition provision. And, with the voiding of paragraph 18—and any other repetitive agreement the plaintiff may have made—as violative of public policy, there exists no ground to deny plaintiff enforcement of paragraph 11 (b) (iii) which, as noted, obligates the defendant to pay withdrawing partners, such as the plaintiff, the balance of their capital account at the end of the fifth fiscal year after withdrawal. The plaintiff is, therefore, entitled to summary judgment upon his first two causes of action.

As to the plaintiff's remaining causes, while we do not think that he may recover upon an account stated theory since it is clear that the defendant's report as to the status of the plaintiff's account was not intended as an acknowledgment of an amount owed, we do think that the plaintiff is entitled to an accounting. Although the plaintiff in a part of the Partnership Agreement which has not been voided, waived an accounting, we decline to give this waiver effect in circumstances such as those at bar in which it has been established that the Partnership Agreement has been contravened to the plaintiff's detriment and there are, as a result, sums, as yet unascertained, owing from the defendant firm to the plaintiff. The proper mechanism for determining the precise amount owed is an accounting (see, *Munyan v Curtis, Mallet-Prevost, Colt & Mosle,* 99 AD2d 716; *see also,* Partnership Law § 44) and we remand for that purpose. Concur—Murphy, P. J., Milonas, Ellerin, Asch and Rubin, JJ.