# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1109**

**CA 13-00340**

PRESENT: FAHEY, J.P., PERADOTTO, LINDLEY, SCONIERS, AND WHALEN, JJ.

---

BROWN & BROWN, INC. AND BROWN & BROWN OF NEW
YORK, INC., PLAINTIFFS-RESPONDENTS-APPELLANTS,

V                                                    OPINION AND ORDER

THERESA A. JOHNSON AND LAWLEY BENEFITS GROUP, LLC,
DEFENDANTS-APPELLANTS-RESPONDENTS.
(APPEAL NO. 1.)

---

PHILLIPS LYTLE LLP, BUFFALO (PRESTON L. ZARLOCK OF COUNSEL), FOR
DEFENDANTS-APPELLANTS-RESPONDENTS.

WARD GREENBERG HELLER & REIDY LLP, ROCHESTER, LITTLER MENDELSON, P.C.,
NEW YORK CITY (DAVID S. WARNER OF COUNSEL), FOR
PLAINTIFFS-RESPONDENTS-APPELLANTS.

---

Appeal and cross appeal from an order of the Supreme Court, Erie County (John A. Michalek, J.), entered August 28, 2012. The order, among other things, denied in part the motion of defendants for summary judgment dismissing the complaint.

It is hereby ORDERED that said cross appeal from the order insofar as it concerns the non-inducement covenant is unanimously dismissed and the order is modified on the law by granting that part of the motion with respect to the non-solicitation covenant in the first cause of action and denying the remainder of the motion and as modified the order is affirmed without costs.

Opinion by WHALEN, J.:

I

Defendant Theresa A. Johnson was hired by plaintiffs, insurance intermediaries, in December 2006 to provide actuarial analysis for plaintiffs. On her first day of work, Johnson was presented with a number of documents to sign, including an Employment Agreement (hereinafter, Agreement), which contained the three covenants at issue in this dispute: a non-solicitation covenant, which prohibited Johnson from soliciting or servicing any client of plaintiffs' New York offices for two years after termination of Johnson's employment; a confidentiality covenant, which prohibited Johnson from disclosing plaintiffs' confidential information or using it for her own purposes; and a non-inducement covenant, which prohibited Johnson from inducing plaintiffs' New York employees to leave plaintiffs' employment for two

years after termination of Johnson's employment.  The Agreement also stated that it would be governed by and construed and enforced according to Florida law.

Plaintiffs terminated Johnson from her position on February 25, 2011.  Shortly thereafter, Johnson was hired by defendant Lawley Benefits Group, LLC (Lawley).  Plaintiffs subsequently commenced this action.  The first two causes of action were against Johnson only: breach of contract, for violation of the non-solicitation, confidentiality, and non-inducement covenants in the Agreement; and misappropriation of confidential and proprietary information, which information plaintiffs alleged constituted trade secrets.  As against Johnson and Lawley, plaintiffs' third cause of action alleged tortious interference with plaintiffs' prospective and existing business relations.  As against Lawley only, plaintiffs' fourth cause of action alleged that Lawley tortiously interfered with the Agreement and induced Johnson to breach the Agreement.  Defendants subsequently moved for, inter alia, summary judgment dismissing the complaint. Supreme Court initially determined that the Florida choice-of-law provision in the Agreement was unenforceable because the Agreement bore no reasonable relationship to the state of Florida, and thus the court determined that New York law would apply.  The court granted defendants' motion with respect to the first cause of action, except to the extent that plaintiffs could establish that Johnson violated the non-solicitation covenant of the Agreement.  The court further granted defendants' motion with respect to the second and third causes of action, and denied the motion with respect to the fourth cause of action.  In appeal No. 1, defendants appeal and plaintiffs cross-appeal from that order.

Plaintiffs subsequently moved for leave to reargue, contending that the court erred in dismissing that part of plaintiffs' first cause of action alleging that Johnson breached the non-inducement covenant of the Agreement because defendants' motion did not address that covenant and defendants therefore failed to meet their burden. The court granted plaintiffs' motion for leave to reargue and, upon reargument, the court reinstated that part of the first cause of action alleging that Johnson breached the non-inducement covenant.  In appeal No. 2, defendants appeal from that order.

II

Initially, we reject plaintiffs' contention that defendants' motion for summary judgment should have been denied because it was premature.  That contention is not properly before us inasmuch as plaintiffs have raised it for the first time on appeal (*see Bradley v Benchmark Mgt. Corp.*, 294 AD2d 879, 880).  In any event, plaintiffs " 'failed to demonstrate that facts essential to oppose the motion were in [defendants'] exclusive knowledge and possession and could be obtained by discovery' " (*M&T Bank v HR Staffing Solutions, Inc.* [appeal No. 2], 106 AD3d 1498, 1499; *see* CPLR 3212 [f]).

As another threshold matter, we must determine whether the court properly held that the Florida choice-of-law provision in the

Agreement is unenforceable and that the law of New York governs this dispute. It is well settled that there is a " 'strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements' " (*Bloomfield v Bloomfield*, 97 NY2d 188, 193, quoting *Matter of Greiff*, 92 NY2d 341, 344). Thus, New York courts generally will enforce a choice-of-law provision in order to "effectuate the parties' intent" (*Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d 624, 629). The chosen law, however, must "bear[] a reasonable relationship to the parties or the transaction" and must not be " 'truly obnoxious' " to New York's public policy (*id.*, quoting *Cooney v Osgood Mach.*, 81 NY2d 66, 79; *see Matter of Frankel v Citicorp Ins. Servs., Inc.*, 80 AD3d 280, 286).

We agree with plaintiffs that the court erred in determining that the choice-of-law provision in the Agreement was unenforceable because Florida law bears no reasonable relationship to the parties or the transaction. Plaintiff Brown & Brown, Inc. (BBI) is a Florida corporation with its principal place of business in Florida, and it is the parent corporation of plaintiff Brown & Brown of New York, Inc. (BBNY). The Agreement stated that it was "made and entered into by and among [BBI], a Florida corporation ('<u>Parent</u>'), [BBNY], a New York corporation (collectively with Parent, the '<u>Company</u>'), and [Johnson], a resident of the State of New York." Plaintiffs submitted evidence that BBI directed sales strategies, set sales goals, and provided promotional and educational material for BBNY. Plaintiffs also submitted evidence that Johnson's salary was administered in Florida and paid from a Florida bank account, and that Johnson and her supervisor traveled to Florida to attend training sessions and meet with BBI employees. We therefore conclude that Florida law "bears a reasonable relationship to the parties or the transaction" (*Welsbach*, 7 NY3d at 629; *see Finucane v Interior Constr. Corp.*, 264 AD2d 618, 620).

We nevertheless conclude that the Florida choice-of-law provision in the Agreement is unenforceable because it is " 'truly obnoxious' " to New York public policy (*Welsbach*, 7 NY3d at 629). In New York, agreements that restrict an employee from competing with his or her employer upon termination of employment are judicially disfavored because " 'powerful considerations of public policy . . . militate against sanctioning the loss of a [person's] livelihood' " (*Reed, Roberts Assoc. v Strauman*, 40 NY2d 303, 307, *rearg denied* 40 NY2d 918, quoting *Purchasing Assoc. v Weitz*, 13 NY2d 267, 272, *rearg denied* 14 NY2d 584; *see Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.*, 42 NY2d 496, 499; *D&W Diesel v McIntosh*, 307 AD2d 750, 750). "So potent is this policy that covenants tending to restrain anyone from engaging in any lawful vocation are almost uniformly disfavored and are sustained only to the extent that they are reasonably necessary to protect the legitimate interests of the employer and *not unduly harsh or burdensome to the one restrained*" (*Post v Merrill Lynch, Pierce, Fenner & Smith*, 48 NY2d 84, 86-87, *rearg denied* 48 NY2d 975 [emphasis added]). The determination whether a restrictive covenant is reasonable involves the application of a three-pronged test: "[a] restraint is reasonable only if it: (1) is no greater than is required for the protection of the legitimate interest of the

employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public" (*BDO Seidman v Hirshberg*, 93 NY2d 382, 388-389 [emphasis omitted]). "A violation of any prong renders the covenant invalid" (*id.* at 389). Thus, under New York law, a restrictive covenant that imposes an undue hardship on the restrained employee is invalid and unenforceable (*see id.*). Employee non-compete agreements "will be carefully scrutinized by the courts" to ensure that they comply with the "prevailing standard of reasonableness" (*id.* at 388-389).

By contrast, Florida law expressly forbids courts from considering the hardship imposed upon an employee in evaluating the reasonableness of a restrictive covenant. Florida Statutes § 542.335 (1) (g) (1) provides that, "[i]n determining the enforceability of a restrictive covenant, a court . . . *[s]hall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought*" (emphasis added). The statute, effective July 1, 1996, also provides that a court considering the enforceability of a restrictive covenant must construe the covenant "in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement" and "shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract" (§ 542.335 [1] [h]; *see Environmental Servs., Inc. v Carter*, 9 So3d 1258, 1262 [Fla Dist Ct App]). Thus, although the statute requires courts to consider whether the restrictions are reasonably necessary to protect the legitimate business interests of the party seeking enforcement (*see* § 542.335 [1] [c]; *Environmental Servs., Inc.*, 9 So3d at 1262), the statute prohibits courts from considering the hardship on the employee against whom enforcement is sought when conducting its analysis (*see Atomic Tattoos, LLC v Morgan*, 45 So3d 63, 66 [Fla Dist Ct App]).

Based on the foregoing, we conclude that Florida law prohibiting courts from considering the hardship imposed on the person against whom enforcement is sought is " 'truly obnoxious' " to New York public policy (*Welsbach*, 7 NY3d at 629), inasmuch as under New York law, a restrictive covenant that imposes an undue hardship on the employee is invalid and unenforceable for that reason (*see BDO Seidman*, 93 NY2d at 388-389). Furthermore, while New York judicially disfavors such restrictive covenants, and New York courts will carefully scrutinize such agreements and enforce them "only to the extent that they are reasonably necessary to protect the legitimate interests of the employer and not unduly harsh or burdensome to the one restrained" (*Post*, 48 NY2d at 87; *see BDO Seidman*, 93 NY2d at 388-389; *Columbia Ribbon & Carbon Mfg. Co.*, 42 NY2d at 499; *Reed*, 40 NY2d at 307; *Purchasing Assoc.*, 13 NY2d at 272), Florida law requires courts to construe such restrictive covenants in favor of the party seeking to protect its legitimate business interests (*see* Florida Statutes § 542.335 [1] [h]).

We are not persuaded by plaintiffs' argument that the Agreement at issue here contains no non-compete clause, inasmuch as the term

"restrictive covenants" in the Florida statute encompasses "all contractual restrictions such as noncompetition/nonsolicitation agreements, confidentiality agreements, exclusive dealing agreements, and all other contractual restraints of trade" (*Environmental Servs., Inc.*, 9 So3d at 1262). We likewise reject plaintiffs' contention that Florida law is not truly obnoxious to New York public policy because the Florida statute has been interpreted, in practice, to disallow any undue hardship to the employee. In the case upon which plaintiffs rely for that proposition, the court wrote that "the covenant may be unreasonable when it inflicts an unduly harsh or unnecessary result upon the employee" (*Edwards v Harris*, 964 So2d 196, 197-198 [Fla Dist Ct App]). In support of that proposition, however, the court cited two cases, one decided *before* the relevant statute became effective (*Auto Club Affiliates, Inc. v Donahey*, 281 So2d 239, 241 [Fla Dist Ct App]), and the other refusing to enforce a restrictive covenant because it was overly broad, not because it imposed an undue hardship on the employee (*Austin v Mid State Fire Equip. of Cent. Florida, Inc.*, 727 So2d 1097, 1098 [Fla Dist Ct App]). We further note that three other courts similarly have determined that the Florida statute conflicts with the public policy of their respective states (*see Carson v Obor Holding Co., LLC*, 318 Ga App 645, 654, 734 SE2d 477, 484-485; *Brown & Brown, Inc. v Mudron*, 379 Ill App 3d 724, 727-728, 887 NE2d 437, 440; *Unisource Worldwide, Inc. v South Cent. Alabama Supply, LLC*, 199 F Supp 2d 1194, 1201 [Ala]). Based on the foregoing, we conclude that the Florida choice-of-law provision in the Agreement is unenforceable and that the court properly determined that the law of New York should govern this dispute (*see generally Matter of Midland Ins. Co.*, 16 NY3d 536, 543-544).

III

With respect to plaintiffs' first cause of action, alleging that Johnson breached the Agreement, we reject defendants' contention that they are entitled to summary judgment dismissing that cause of action in its entirety because Johnson was involuntarily terminated without cause. Even assuming, arguendo, that Johnson was terminated without cause, we conclude that such termination would not render the restrictive covenants in the Agreement unenforceable. Defendants' reliance on the Court of Appeals' decision in *Post* is misplaced. In that case, the Court of Appeals held that New York policies "preclude the enforcement of *a forfeiture-for-competition clause* where the termination of employment is involuntary and without cause" (48 NY2d at 88 [emphasis added]), i.e., a clause requiring the employee to comply with a restrictive covenant in order to continue receiving post-employment benefits to which the employee otherwise would be entitled (*see Wise v Transco, Inc.*, 73 AD2d 1039, 1039). There is no such clause in the Agreement herein. Contrary to defendants' contention, this Court's decision in *Eastman Kodak Co. v Carmosino* (77 AD3d 1434) did not extend the *Post* holding to establish a per se rule that involuntary termination without cause renders all restrictive covenants unenforceable. Rather, this Court cited *Post* while conducting a "balance of the equities" analysis in the context of the plaintiff's motion seeking a preliminary injunction (*id.* at 1436).

Our decision in *Eastman Kodak Co.* did not impact our decision in *Wise*, in which we refused to extend the *Post* holding to restrictive covenants that do not involve a forfeiture-for-competition clause.  In any event, there are issues of fact whether Johnson was terminated without cause.

Although we agree with plaintiffs that the court properly determined that defendants failed to establish that plaintiffs have no legitimate interest in protecting their client relationships as a matter of law, we nevertheless agree with defendants that the non-solicitation covenant of the Agreement is overbroad and unenforceable. We therefore conclude that the order in appeal No. 1 should be modified by granting that part of defendants' motion with respect to the first cause of action.  We note at the outset that the overbreadth of the non-solicitation covenant is "an issue of law that 'could not have been avoided by [plaintiffs] if brought to [their] attention in a timely manner' " (*Paul v Cooper*, 45 AD3d 1485, 1486, quoting *Oram v Capone*, 206 AD2d 839, 840), and thus it may properly be raised by defendants for the first time on appeal.

A non-solicitation covenant is overbroad and therefore unenforceable "if it seeks to bar the employee from soliciting or providing services to clients with whom the employee never acquired a relationship through his or her employment" (*Scott, Stackrow & Co., C.P.A.'s, P.C. v Skavina*, 9 AD3d 805, 806, *lv denied* 3 NY3d 612; *see BDO Seidman*, 93 NY2d at 393).  Here, the non-solicitation covenant purported to restrict Johnson from, inter alia, soliciting, diverting, servicing, or accepting, either directly or indirectly, "any insurance or bond business of any kind or character from any person, firm, corporation, or other entity that is a customer or account of the New York offices of the Company during the term of [the] Agreement" for two years following the termination of Johnson's employment, without regard to whether Johnson acquired a relationship with those clients. We conclude that the language of the non-solicitation covenant renders it overbroad and unenforceable (*see BDO Seidman*, 93 NY2d at 393; *Scott, Stackrow & Co., C.P.A.'s, P.C.*, 9 AD3d at 806-807).

Plaintiffs contended at oral argument of this appeal that, if this Court determines that the non-solicitation covenant is overbroad, we nevertheless should partially enforce the covenant, inasmuch as plaintiffs seek to prevent Johnson from soliciting and servicing only those clients with whom Johnson actually developed a relationship during her employment with plaintiffs.  We reject that contention.  As the Court of Appeals stated in *BDO Seidman*, partial enforcement may be justified "if the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing" (93 NY2d at 394).  "Factors weighing against partial enforcement are the imposition of the covenant in connection with hiring or continued employment—as opposed to, for example, imposition in connection with a promotion to a position of responsibility and trust—the existence of coercion or a general plan of the employer to forestall competition, and the employer's knowledge that the covenant

was overly broad" (*Scott, Stackrow & Co., C.P.A.'s, P.C.*, 9 AD3d at 807). Here, it is undisputed that Johnson was not presented with the Agreement until her first day of work with plaintiffs, after Johnson already had left her previous employer. Plaintiffs have made no showing that, in exchange for signing the Agreement, Johnson received any benefit from plaintiffs beyond her continued employment (*see Scott, Stackrow & Co., C.P.A.'s, P.C.*, 9 AD3d at 807-808; *cf. BDO Seidman*, 93 NY2d at 395). Furthermore, plaintiffs presented the Agreement to Johnson in December 2006, more than seven years after *BDO Seidman* was decided. We conclude, as the Third Department concluded in *Scott*, that the issuance of the decision in *BDO Seidman* "served as notice to plaintiff[s] that the agreement at issue here was also overly broad" (*Scott, Stackrow & Co., C.P.A.'s, P.C.*, 9 AD3d at 808).

Contrary to plaintiffs' further contention, the fact that the Agreement contemplated partial enforcement does not require partial enforcement of the non-solicitation covenant. As the Court of Appeals wrote in *BDO Seidman*, it previously "expressly recognized and applied the judicial power to sever and grant partial enforcement for an overbroad employee restrictive covenant," and the decision whether to do so is left to the discretion of the court after "a case specific analysis" (93 NY2d at 394). Indeed, the Agreement itself provided that, in the event that a court declared any of the covenants unenforceable, "the parties agree that such court *shall be authorized* to modify such covenants so as to render . . . [them] valid and enforceable to the maximum extent possible" (emphasis added). Furthermore, allowing a former employer the benefit of partial enforcement of overly broad restrictive covenants simply because the applicable agreement contemplated partial enforcement would eliminate consideration of the factors set forth by the Court of Appeals in *BDO Seidman*, and would enhance the risk that "employers will use their superior bargaining position to impose unreasonable anti-competitive restrictions, uninhibited by the risk that a court will void the entire agreement, leaving the employee free of any restraint" (93 NY2d at 394). In our view, the fact that the Agreement here contemplated partial enforcement does not demonstrate the "absence of overreaching" on plaintiffs' part, but, rather, demonstrates that plaintiffs "imposed the covenant in bad faith, knowing full well that it was overbroad" (*id.* at 394-395; *see Scott, Stackrow & Co., C.P.A.'s, P.C.*, 9 AD3d at 807-808). We therefore conclude that the non-solicitation covenant should not be partially enforced and must be severed from the Agreement (*see Scott, Stackrow & Co., C.P.A.'s, P.C.*, 9 AD3d at 807-808; *cf. BDO Seidman*, 93 NY2d at 394-395).

We agree with plaintiffs on their cross appeal in appeal No. 1, however, that the court erred in granting those parts of defendants' motion for summary judgment dismissing plaintiffs' first cause of action with respect to the confidentiality covenant and the second cause of action, alleging misappropriation of trade secrets. We therefore conclude that the order in appeal No. 1 should be further modified accordingly. Whether information sought to be protected from disclosure is confidential or constitutes a trade secret "is generally a question of fact" (*Ashland Mgt. v Janien*, 82 NY2d 395, 407; *see Golden Eagle/Satellite Archery v Epling*, 291 AD2d 838, 838). Here,

there is evidence that the information that plaintiffs seek to protect does not merely consist of "compilations of customer names and addresses or phone numbers" (*Marcone APW, LLC v Servall Co.*, 85 AD3d 1693, 1695). Viewing the record in the light most favorable to plaintiffs, as we must in the context of defendants' motion (*see Vega v Restani Constr. Corp.*, 18 NY3d 499, 503), we conclude that there are issues of fact regarding whether the information that plaintiffs seek to protect is confidential or amounts to trade secrets, whether the confidentiality covenant was necessary to protect plaintiffs' legitimate business interests, and whether Johnson violated the confidentiality covenant or misappropriated plaintiffs' trade secrets (*see Ashland Mgt. Inc. v Altair Invs. NA, LLC*, 59 AD3d 97, 104, *mod on other grounds* 14 NY3d 774; *Listworks Corp. v LCS Indus.*, 155 AD2d 305, 305).

Furthermore, we agree with plaintiffs with respect to appeal No. 1 that the court erred in granting that part of defendants' motion for summary judgment dismissing plaintiffs' third cause of action, which alleged tortious interference with prospective and existing business relations against Johnson and Lawley. Viewing the facts in the light most favorable to plaintiffs, we conclude that there are issues of fact whether defendants interfered with plaintiffs' business relations with third parties, whether defendants' actions amounted to a tort independent of the tortious interference with business relations, and whether there was a resulting injury to the business relations (*see Carvel Corp. v Noonan*, 3 NY3d 182, 189-190; *North State Autobahn, Inc. v Progressive Ins. Group Co.*, 102 AD3d 5, 21; *John Hancock Life Ins. Co. v 42 Delaware Ave. Assoc., LLC*, 15 AD3d 939, 940-941, *lv dismissed in part and denied in part* 5 NY3d 819). We therefore conclude that the order in appeal No. 1 should be further modified accordingly.

IV

Finally, we reject defendants' contention in appeal No. 2 that the court erred, upon reargument, in reinstating that part of plaintiffs' first cause of action alleging that Johnson breached the non-inducement covenant of the Agreement. Defendants did not meet their burden on that issue by noting gaps in plaintiffs' proof (*see Edwards v Arlington Mall Assoc.*, 6 AD3d 1136, 1137).

V

Accordingly, we conclude that the order in appeal No. 1 should be modified as set forth herein, and that the order in appeal No. 2 should be affirmed.

Entered:  February 7, 2014                    Frances E. Cafarell
                                              Clerk of the Court