# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2011
_____

Travelex Insurance Services, Inc., a Delaware Corporation,

*Plaintiff - Appellant*,

v.

Lynn Barty,

*Defendant - Appellee.*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 13, 2020
Filed: August 17, 2020
_____

Before COLLOTON and BENTON, Circuit Judges, and WILLIAMS,[1] District Judge.
_____

COLLOTON, Circuit Judge.

Travelex Insurance Services, Inc. (Travelex), sued Lynn Barty to enforce an alleged agreement restricting her ability to compete with Travelex by soliciting

_____

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa, sitting by designation.

business from certain customers. The district court determined that the purported agreement was unenforceable and granted partial summary judgment for Barty. We conclude that summary judgment was not warranted, and we therefore reverse and remand for further proceedings.

Barty began to work as a regional account manager in New York for Travelex in January 2008. As a condition of employment, Travelex's parent corporation, Travelex America, Inc., required employees to sign a confidentiality and non-solicitation agreement. The non-solicitation agreement provided that employees must refrain from "directly or indirectly providing or soliciting to provide products or services," in competition with Travelex America, to certain customers for one year after termination of employment. The agreement applied "to any existing customer or prospective customer of [Travelex America] with whom [the employee] had personal contact and provided (or participated in a proposal to provide) products or services during the two-year period prior to termination of employment."

There is a dispute about whether Barty signed the agreement. Barty denies that she did so. Travelex asserts that Barty signed the agreement but says that the document was lost. Travelex's vice president of human resources, Mary Jo Gray, testified that she knows there was a signed agreement with Barty, because she faxed a signed copy to Barty at her request in March 2008.

In 2016, Travelex was acquired by Cover-More Group. After the sale, Travelex required all employees to sign a revised confidentiality and non-solicitation agreement as a condition of continued employment. Barty declined to sign the new agreement, and Travelex terminated her employment for that reason in May 2017. Barty then began to work for a competitor of Travelex, and Travelex alleges that she engaged in conduct that violated the 2008 non-solicitation agreement.

Travelex sued Barty in Nebraska state court, alleging breach of contract and several other claims. Barty removed the case to federal court and moved for summary judgment on the breach of contract claim.

The district court granted Barty's motion. The court determined that whether or not Barty signed the 2008 agreement, she was entitled to summary judgment. The court reasoned that any 2008 agreement was nullified because the agreement lacked mutuality of obligation once Travelex terminated Barty in 2017 for refusing to sign the new non-solicitation agreement. Travelex then agreed to dismiss its other claims with prejudice, and it appeals the district court's order. We review the decision *de novo*. Summary judgment is appropriate where a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The district court assumed for the sake of analysis that Barty signed the 2008 non-solicitation agreement, and we do the same. Although Travelex could not produce a signed copy, there is a genuine dispute of fact about whether Barty signed the agreement. Travelex produced an unsigned copy of the standard confidentiality and non-solicitation agreement bearing Barty's name. Gray, the vice president of human resources, testified that she remembered seeing Barty's signature on a non-solicitation agreement when she faxed a copy to Barty in March 2008. Gray's testimony is corroborated by a March 2008 e-mail from Barty to Gray asking for the non-compete portion of her employment agreement, and a contemporaneous fax cover sheet addressed from Gray to Barty with the subject line "Signed NS." This evidence is sufficient to support a finding by a reasonable jury that Barty signed the agreement.

Assuming that Barty signed the non-solicitation agreement, we apply New York law to the remaining issues on appeal. The standard agreement provides that the agreement will "be interpreted and enforced in accordance with the law of the State of New York." R. Doc. 56-10, at 2. The law of the forum state, Nebraska,

generally gives effect to contractual choice-of-law provisions, *DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir. 2006), and the narrow exceptions to that rule do not apply. New York has a substantial relationship to the parties, and even if Nebraska were judged to have a materially greater interest in this particular dispute, it has no fundamental policy that would contravene the parties' choice of law. *See id.* at 896.

The district court concluded that even if Barty signed the 2008 agreement, it became "a nullity at the time of the acquisition of Travelex by Cover-More," because the "2016 agreement was effectively an offer of continued employment by a different entity." The court thought the "mutuality of obligation on which the 2008 covenant rested—the quid-pro-quo that Travelex would continue to employ the employee if the employee covenanted not to compete—was destroyed by the employer's offer of a new contract of employment, conditioned on different terms."

We disagree that the Cover-More acquisition and the demand that Barty sign a new agreement in 2016 nullified the 2008 agreement if it existed. The parties did not reach a new agreement in 2016, so there was no new contract that could have superseded a former agreement. That Travelex terminated Barty when she declined to sign a new non-solicitation agreement did not eliminate the "mutuality of obligation" on which the 2008 agreement rested. Under the purported 2008 agreement, Barty's promise not to solicit competitors was exchanged for employment by Travelex. Under New York law, continued employment for a "substantial period" of time is sufficient consideration to support a non-compete agreement. *See Zellner v. Stephen D. Conrad, M.D., P.C.*, 589 N.Y.S.2d 903, 907 (N.Y. App. Div. 1992). Travelex employed Barty for approximately nine years after she allegedly entered into

the 2008 agreement, so there was sufficient consideration to bind Barty to her obligation under the 2008 contract even though she was terminated in 2017.[2]

Barty argues that we should affirm the judgment on an alternative ground, namely, that New York law does not allow enforcement of restrictive covenants on employment when an employee is dismissed without cause. Citing *Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 397 N.E.2d 358 (N.Y. 1979), Barty argues that termination without cause "destroys the mutuality of obligation" on which a non-compete agreement rests. *Id.* at 361. *Post* held that where an employer involuntarily terminated an employee, the firm could not enforce a provision in its pension plan that allowed the firm to forfeit the employee's post-employment pension benefits when the former employee competed with the firm. The court explained that the employer's continued willingness to offer employment was an essential aspect of the pension agreement, so the employer could not involuntarily terminate the employee and forfeit the pension rights. Such a forfeiture was "unreasonable as a matter of law." *Id*. at 361.

We may assume for the sake of analysis that Travelex terminated Barty without cause in 2017, although Travelex disputes the point. Even with that assumption, *Post* does not establish a per se rule against enforcement of non-solicitation agreements when an employee is terminated without cause. *Hall v. Edgewood Partners Ins. Ctr.,*

---

[2]The record includes an unsigned copy of a non-solicitation agreement between Travelex America and Barty. There is testimony that Travelex America was a parent corporation of Travelex Insurance Services, and that Travelex America later sold the Travelex Insurance Services division to Cover-More. The unsigned agreement provides that it will be binding on, and enure to the benefit of, "heirs, representatives, successors, and assigns" of Travelex America. At oral argument, Barty questioned whether Travelex could benefit from an agreement between Barty and Travelex America, but the record is not further developed on the relationship among the corporate entities, and Barty did not raise this issue in the district court or in her brief on appeal. We therefore do not address the question at this time.

*Inc.*, 878 F.3d 524, 529 (6th Cir. 2017). The question here is not whether Travelex may deprive Barty of previously earned post-employment benefits, as in *Post*, but whether it may enforce an agreement forbidding solicitation of customers for one year after Barty's termination in exchange for nine years of pre-termination employment.

Assuming that Barty was terminated without cause, the determinative issue would be whether the non-solicitation agreement is reasonable. The general rule in New York is that "noncompete clauses in employment contracts are not favored," but they will be enforced "to the extent reasonable and necessary to protect valid business interests." *Morris v. Schroder Capital Mgmt. Int'l*, 859 N.E.2d 503, 506 (N.Y. 2006). New York courts have recognized that agreements limiting a former employee's ability to solicit customers that she serviced or contacted on behalf of the former employer are reasonable methods for an employer to protect its goodwill. *See BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1225 (N.Y. 1999); *Brown & Brown, Inc. v. Johnson*, 34 N.E.3d 357, 362 (N.Y. 2015). Therefore, the purported 2008 non-solicitation agreement is not unreasonable as a matter of law, and summary judgment was not warranted based on New York law governing restrictive covenants on employment.

Barty next suggests that the 2008 agreement is not enforceable under the Statute of Frauds because it was not in writing and could not be performed within one year. *See* N.Y. Gen. Oblig. Law § 5-701. As discussed, however, there is a genuine dispute of material fact as to whether Barty signed an agreement, so the Statute of Frauds does not support summary judgment for Barty.

Barty also contends that the 2008 agreement would be unenforceable under Nebraska law because it is overly broad and unreasonably restricts her post-employment conduct. Even if we assume that Nebraska law applies, despite the choice-of-law provision designating New York law, the agreement would not be unenforceable. The non-solicitation provision is limited to customers with whom

-6-

Barty had personal contact while employed by Travelex, and that sort of restriction is not unreasonable under Nebraska law. *Aon Consulting, Inc. v. Midlands Fin. Benefits, Inc.*, 748 N.W.2d 626, 638 (Neb. 2008).

The judgment of the district court is reversed, and the case is remanded for further proceedings.

_____